IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALG VESTAVIA HILLS, LLC,
MUGSHOTS BJCC, LLC ,
MUGSHOTS INVERNESS CORNERS, LLC,
CHAD ERON,
JIM HUNTER WALSH,
PATRICK JOHNSON,
STEPHEN ARANT, AND
ALEX PITT                                                    **PLAINTIFFS**

vs.                                     CIVIL ACTION NO. 3:17-CV-788-HSO-JCG

GRAND INVESTMENT HOLDINGS, LLC,
GRAND PROPERTY HOLDINGS, LLC,
GRAND MANAGEMENT, LLC,
GRAND MARKETING, LLC,
MAKING LIFE GRAND CHARITY, INC and
CHRISTOPHER MCDONALD                        **DEFENDANTS**

---

**COMPLAINT FOR DECLATORY JUDGMENT AND OTHER RELIEF
JURY TRIAL DEMANDED**

---

COME NOW, Plaintiffs ALG Vestavia Hills, LLC ("Vestavia Hills"), Mugshots BJCC,

LLC ("Mugshots BJCC"), Mugshots Inverness Corners, LLC ("Mugshots Inverness"), Chad

Eron ("Eron"), Jim Hunter Walsh ("Walsh"), Patrick Johnson ("Johnson"), Stephen Arant

("Arant"), and Alex Pitt ("Pitt") (collectively, "Plaintiffs") and submit their Complaint for

Declaratory Judgment and Other Relief against Grand Investment Holdings, LLC ("GIH"),

Grand Property Holdings, LLC ("GPH"), Grand Management, LLC ("GM"), Grand Marketing,

LLC ("Grand Marketing"), Making Life Grand, Inc. ("MLG") and Christopher McDonald

("McDonald") (collectively "Defendants").  In support of the Complaint, Plaintiffs would show

the following:

## I. PARTIES

1.        Plaintiff Vestavia Hills is a Limited Liability Company organized under the laws of the State of Alabama with its principle place of business at 1919 Kentucky Avenue, Vestavia Hills, AL 35216. Vestavia Hills owns a Mugshots Restaurant located at 1919 Kentucky Avenue, Suite 101, Vestavia Hills, AL 35216 (the "Vestavia Restaurant").

2.        Plaintiff Mugshots BJCC is a Limited Liability Company organized under the laws of the State of Alabama with its principle place of business at 1919 Kentucky Avenue, #101, Vestavia Hills, AL 35216. Mugshots BJCC owns a Mugshots Restaurant located at 2311 Richard Arrington Jr. Blvd N., Suite 100, Birmingham, AL 35203 (the "BJCC Restaurant").

3.        Plaintiff Mugshots Inverness is a Limited Liability Company organized under the laws of the State of Alabama with its principle place of business at 110 Inverness Plaza, Birmingham, AL, 35242. Plaintiff Mugshots Inverness owns a Mugshots restaurant located at 110 Inverness Plaza, Birmingham, AL, 35242 (the "Inverness Restaurant").

4.        Plaintiff Eron is an individual residing at 3625 James Hill Terrace, Hoover, AL 35226.

5.        Plaintiff Walsh is an individual residing at 110 Briarwood Drive, Starkville, MS 39759.

6.        Plaintiff Johnson is an individual residing at159 Sedgefield Avenue, Fairhope, AL 36532.

7.        Plaintiff Arant is an individual residing at 505 Leigh Lane, Starkville, MS 39759.

8.        Plaintiff Pitt is an individual residing at 354A South Summit Street, Fairhope, AL 36532.

9.     Plaintiffs ALG Vestavia Hills, Mugshots BJCC and Mugshots Inverness are sometimes referred to herein as the "Mugshots Birmingham Entities."

10.     Plaintiffs Eron, Walsh, Johnson, Arant and Pitt are sometimes referred to herein as the "Mugshots Birmingham Members." Although Defendant McDonald is also a Member of the Mugshots Birmingham Entities, for purposes of this Complaint he is not considered one of the "Mugshots Birmingham Members."

11.     Defendant GIH is a Limited Liability Company organized under the laws of the State of Louisiana.  Upon information and belief, it may be served with process of this Court upon its owner and sole Member Christopher McDonald at 800 Beaumont Drive, Madison, MS 39110.

12.     Defendant GPH is a Limited Liability Company organized under the laws of the State of Louisiana.  Upon information and belief, it may be served with process of this Court upon its owner Christopher McDonald at 800 Beaumont Drive, Madison, MS 39110.

13.     Defendant GM is a Limited Liability Company organized under the laws of the State of Louisiana.  Upon information and belief, it may be served with process of this Court upon its owner Christopher McDonald at 800 Beaumont Drive, Madison, MS 39110.

14.     Defendant Grand Marketing is a Limited Liability Company organized under the laws of the State of Louisiana. Upon information and belief, it may be served with process of this Court upon its owner Christopher McDonald at 800 Beaumont Drive, Madison, MS 39110.

15.     Defendant MLG is a non-profit corporation organized under the laws of the State of Louisiana. Upon information and belief, it may be served with process of this Court upon its owner Christopher McDonald at 800 Beaumont Drive, Madison, MS 39110.

16.     Defendant McDonald is an adult resident of Madison County, Mississippi. He may be served with process of this Court at 800 Beaumont Drive, Madison, MS 39110.

## II. JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over these parties. This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331. Additionally, venue is proper in this Court.

## III.  FACTS

18.     In January 2011, Plaintiff Vestavia Hills was formed under the laws of the State of Alabama. At that time, it is understood that Defendant Chris McDonald was the sole member of Vestavia Hills. In January 2013, Vestavia Hills admitted, as new members, Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, and Alex Pitt. Vestavia Hill's sole members remain Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, Alex Pitt, and Christopher McDonald.

19.     In August 2013, Plaintiff Mugshots BJCC was formed under the laws of the State of Alabama.  Mugshots BJCC's sole members were (and remain) Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, Alex Pitt, and Christopher McDonald.

20.     In January 2015, Plaintiff Mugshots Inverness was formed under the laws of the State of Alabama. Mugshots BJCC's sole members were (and remain) Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, Alex Pitt, and Christopher McDonald.

21.     On or about December 10, 2015, Defendant McDonald, either on his own or through Defendant GIH, Defendant GPH or Defendant GM, or another entity, fraudulently obtained a loan from Priority One Bank of Hattiesburg ("Priority One") in an unspecified amount (the "December 15 Priority One Loan"), which was secured by collateral property owned by the

4

Mugshots Birmingham Entities. Evidence of the secured collateral property is acknowledged by a UCC financing Statement filed on or about December 15, 2015, listing Mugshots Inverness Corners, LLC as the Debtor and Priority One Bank as the Secured Party (the "December 2015 Filing Statement").

22.      Importantly, while the Mugshots Birmingham Members were told by Defendant McDonald that a small loan was required for Mugshots Inverness, neither the full amount of the December 2015 Priority Loan, nor whether the Mugshots Birmingham Entities benefitted from this loan in any way were ever disclosed to the Mugshots Birmingham Members. The Mugshots Birmingham Members have never seen the loan application, promissory note or any other paperwork other than the December 2015 Filing Statement. Additionally, none of the Mugshots Birmingham Members have seen documentation or confirmation that the money obtained in the December 2015 Priority Loan was used for the benefit of Mugshots Inverness or the Inverness Restaurant.

23.      Upon information and belief, the December 2015 Filing Statement secures the equipment and inventory of the Inverness Restaurant owned by Mugshots Inverness.

24.      Further, the December 2015 Priority One Loan was fraudulently obtained without the full knowledge or consent of Mugshots Inverness Corners, LLC or any of the Mugshots Birmingham Members.

25.      Over one year later, on or around March 6, 2017, Defendant McDonald repeated this fraudulent activity, either on his own or through Defendant GIH, Defendant GPH, Defendant GM, or another entity, upon information and belief by either fraudulently obtaining a second loan from Priority One in another unspecified amount or by refinancing the December

2015 Priority One Loan (the "March 2017 Priority One Loan"), which was also secured by collateral property owned by the Mugshots Birmingham Entities.

26.     Evidence of the secured collateral property is acknowledged by a UCC filing statement filed on or about March 6, 2017, this time listing Mugshots Inverness Corners, LLC and Mugshots BJCC,[1] LLC as the Debtors and Priority One Bank as the Secured Party (the "March 2017 Filing Statement") (the December 2015 and the March 2017 Priority One Loans are sometimes referred to herein as the "Priority One Loans").

27.     Upon information and belief, the March 2017 Filing Statement secures the equipment and inventory of the Inverness Restaurant owned by Mugshots Inverness and the BJCC Restaurant owned by Mugshots BJCC. The Mugshots Birmingham Members were never made aware that the equipment and inventory of the BJCC Restaurant would be collateralized by a loan.

28.     As with the December 2015 Priority One Loan, the Mugshots Birmingham Members have no knowledge of the March 2017 Priority One Loan, its purpose, or whether the Mugshots Birmingham Entities benefitted from this loan in any way. The Mugshots Birmingham Members have never seen the loan application, promissory note or any other paperwork related to the March 2017 Priority One Loan other than the March 2017 Filing Statement. Additionally, none of the Mugshots Birmingham Members have seen documentation or confirmation that the money obtained in the March 2017 Priority Loan was used for the benefit of Mugshots Inverness or the Inverness Restaurant.

---

[1] Mugshots BJCC LLC is an Alabama entity. The UCC filing statements at Exhibit E hereto incorrectly give the address of Mugshots BJCC, LLC in Louisiana. A search of the Louisiana Secretary of State's website shows no existing entity named Mugshots BJCC, LLC in Louisiana.

29.     Upon information and belief, Defendant McDonald falsely represented to Priority One that either he was the sole Member of Mugshots Inverness and Mugshots BJCC or that Defendant GIH, Defendant GM, or Defendant GPH (each of which Defendant McDonald is the sole owner) was the sole Member of Mugshots Inverness and Mugshots BJCC, and/or that no other persons or entities had an ownership interest in the equipment and inventory of Mugshots Inverness or Mugshots BJCC.

30.     While the Mugshots Birmingham Members were aware of the existence of a small loan for Birmingham Inverness and the Inverness Restaurant, the Mugshots Birmingham Members were not informed of the specifics of the Priority One Loans, the amount of the Priority One Loans, or the full extent that the equipment and inventory of the restaurants owned by Mugshots Inverness or Mugshots BJCC had been encumbered. The full extent (but not the full amount) of the Priority One Loans were only discovered by Plaintiffs after they discovered that Defendant McDonald may have been engaging in fraudulent business practices with other Mugshots entities in which he had an ownership interest. The Mugshots Birmingham Members have seen no documentation nor have they had any confirmation that the money obtained in the March 2017 Priority Loan was used for the benefit of either Mugshots Inverness or the Inverness Restaurant or Mugshots BJCC or the BJCC Restaurant.

31.     Importantly, during all of these transactions, upon information and belief, Defendant McDonald fraudulently represented to Priority One Bank that he or another of the Defendants owned solely by McDonald was the sole owner of Mugshots Inverness and Mugshots BJCC, and that he had "good and marketable title" to the equipment and inventories of Mugshots Inverness and Mugshots BJCC.

7

32.     Furthermore, after the Mugshots Entities Members became members of Vestavia Hills in 2013, Vestavia Hills entered into a Business Service & Management Agreement (the "Vestavia Management Agreement") with Defendant GM, under which GM would manage all aspects of the Vestavia Restaurant.

33.     Likewise, after the formation of Mugshots BJCC in 2013, Mugshots BJCC entered into a Business Service & Management Agreement (the "BJCC Management Agreement") with Defendant GM, under which GM would manage all aspects of the BJCC Restaurant.

34.     Again, after the formation of Mugshots Inverness in 2015, Mugshots Inverness entered into a Business Service & Management Agreement (the "Inverness Management Agreement") with Defendant GM under which GM would manage all aspects of the Inverness Restaurant.

35.     According to filings with the Louisiana Secretary of State, Defendant GM is also owned by Defendant McDonald.

36.     Under the Vestavia Management Agreement, the BJCC Management Agreement and the Inverness Management Agreement, Defendant GM was to manage the operation of the restaurants owned by Vestavia Hills, Mugshots BJCC and Mugshots Inverness. Specifically, Defendant GM was responsible for "the payment of all outgoing taxes, fees, wages, expenses and costs of any kind" of the Mugshots Birmingham Entities. Defendant GM was further responsible for keeping and maintaining "all appropriate financial records" of the Mugshots Birmingham Entities and their restaurants.

37.     Upon information and belief, Defendant GM (owned by Defendant McDonald) was grossly negligent in its management of the restaurants because it failed to maintain the

8

financial records and to make payments as required. These failures caused the Mugshots Birmingham Entities to become delinquent in payment of over $200,000.00 in federal, state and local taxes. Such failures placed significant financial pressure on the Mugshots Birmingham Entities because the Mugshots Birmingham Entities both had to quickly catch up on such payments, including the payment of significant penalties, and employ an accountant to rectify the improperly maintained financial records.

38.     Defendant GM also caused substantial monies to be spent on advertising and marketing in an amount over $118,000.00 However, there is no record of what this "advertising" or "marketing" constituted or how it benefited the Mugshots Birmingham Entities, and upon information and belief, this money was given to either Defendant McDonald or one of his business entities without proper consideration in the form of actual advertising or marketing.

39.     Upon information and belief, in January 2016, Defendant GM caused Mugshots Inverness to pay approximately $27,000 to Mugshots Montgomery, LLC, a separate entity owned by Defendant McDonald but not the Mugshots Birmingham Members, for "used computer equipment," which the Mugshots Birmingham Members knew nothing about and which funds actually appear to have been embezzled from Mugshots Inverness by Defendant McDonald.

40.     Upon information and belief, in November 2016, Defendant GM caused Mugshots BJCC to pay approximately $4,757.50 to French Mix interior design company for unknown services to Mugshots BJCC. French Mix interior design company never provided services to Mugshots BJCC or its restaurant but the $4,757.50 was paid to French Mix for interior design services provided to Defendant McDonald and his home.

41.     Upon information and belief, between the years 2013 and 2015, defendant GM caused Mugshots BJCC to pay certain unexplained "additional development fees" to Defendant GP, another entity owned by Defendant McDonald, in an amount of approximately $100,000.00. The Birmingham Entities Members were never informed of and never approved the payment of these "additional development fees," and do not know how they were used to benefit the Mugshots Birmingham Entities.

42.     Additionally, in 2016, Defendant GM caused the Mugshots Birmingham Entities to pay over $39,000.00 to Defendant MLG, a Louisiana non-profit entity also owned by Defendant McDonald. While the Mugshots Birmingham Entities' franchise agreements do specify a percentage of burger sales are paid to MLG, the Birmingham Entities Members were never informed of the amount of these payments and have no knowledge of whether the $39,000.00 was actually paid to MLG or whether Defendant MLG used the money for charitable purposes.

43.     Furthermore, during the term of the Management Agreements between Defendant GM and the Mugshots Birmingham Entities, the Mugshots Birmingham Entities paid Defendant GM substantial fees for its role in managing the restaurants owned by the Mugshots Birmingham Entities, totaling over $170,000.00, yet Defendant GM failed to appropriately manage the three restaurants, driving the restaurants and the Mugshots Birmingham Entities into debt as well as causing them to sustain penalties for failure to pay taxes and fines incurred due to certain OSHA violations.

44.     Finally, on or about October 2015, Defendant McDonald fraudulently induced the Mugshots Birmingham Members to enter into a developmental agreement for four additional Mugshots restaurants in Alabama. As part of executing the developmental agreement, Defendant

10

McDonald required the Mugshots Birmingham Members to pay $100,000.00 to open those stores. Upon information and belief, this $100,000.00 has not been used toward the development of additional stores but has been used for the sole benefit of Defendant McDonald.

## REQUEST FOR DECLARATORY JUDGMENT

45.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

46.     Under 28 U.S.C. § 2201(a), this Court is empowered to "declare the rights and other legal relations of any interest party seeking such declaration."

47.     Plaintiffs respectfully request that this Court enter a declaratory judgment declaring that, under the terms of the Amended Vestavia Hills Operating Agreement, Defendant McDonald is disassociated as a Member of ALG Vestavia Hills, LLC, and forfeits all rights attendant to such Membership.

48.     Specifically, the Amended Vestavia Hills Operating Agreement provides that a "Member shall be disassociated from [ALG Vestavia Hills] for any act which constitutes a breach of the duty of loyalty [or] an act relating to the business which makes it reasonably not practicable to continue in business with the Member."

49.     Plaintiffs respectfully request that this Court enter a declaratory judgment declaring that, under the terms of the Mugshots BJCC Operating Agreement, Defendant McDonald is disassociated as a Member of Mugshots BJCC, LLC, and forfeits all rights attendant to such Membership.

50.     Specifically, the Mugshots BJCC Operating Agreement provides that a "Member shall be disassociated from [Mugshots BJCC] for any act which constitutes a breach of

the duty of loyalty [or] an act relating to the business which makes it reasonably not practicable to continue in business with the Member."

51.     Likewise, Plaintiffs respectfully request that this Court enter a declaratory judgment declaring that, under the terms of the Mugshots Inverness Operating Agreement, Defendant McDonald is disassociated as a Member of Mugshots Inverness, LLC, and forfeits all rights attendant to such Membership.

52.     Specifically, the Mugshots Inverness Operating Agreement provides that a "Member shall be disassociated from [Mugshots Inverness] for any act which constitutes a breach of the duty of loyalty [or] an act relating to the business which makes it reasonably not practicable to continue in business with the Member."

53.     As detailed above, Defendant McDonald, either individually or through other entities owned solely by him, through false pretenses caused what Plaintiffs believe to be the equipment and inventories of the Mugshots Birmingham Entities to be used as collateral for at least two separate loans solely benefitting Defendant McDonald or his other business ventures.

54.     These encumbrances caused Plaintiffs to retain legal counsel in order to have the liens removed from the property.  Such fraudulently obtained encumbrances breach the duty of loyalty owed to Mugshots Inverness and Mugshots BJCC.

55.     Additionally, Defendant McDonald allowed Defendant GM (also owned by Defendant McDonald) to misappropriate "advertising" and "marketing" funds during Defendant GM's management of the three restaurants.  This breached the duty of loyalty.

56.     Further, Defendant McDonald allowed Defendant GM to accrue over $900,000 in debt through the taking of loans and other means without disclosing the need for or purpose of

12

such loans to the Mugshots Inverness Members. Instead, the loans primarily benefitted Defendant McDonald. This breached the duty of loyalty.

57.     Defendant McDonald also allowed Defendant GM to allegedly purchase "used computer equipment" for use in the Mugshots Inverness restaurant. This "used computer equipment" was never used by the Mugshots Inverness restaurant. Instead, the money used to purchase this used computer equipment solely benefitted Defendant McDonald. This breached the duty of loyalty.

58.     Additionally, Defendant McDonald either on his own accord paid $4,757.50 to French Mix interior design company, or allowed Defendant GM to pay $4,757.50 to French Mix, for services that were never received by Mugshots BJCC. Defendant McDonald was the only party to benefit from this payment to French Mix. This breached the duty of loyalty.

59.     Further, Defendant McDonald caused the restaurants owned by Vestavia Hills, Mugshots BJCC and Mugshots Inverness to pay $100,000.00 in unknown and unapproved development fees in 2013, 2014 and 2015. This payment of development fees served only to benefit Defendant McDonald. This breached the duty of loyalty.

60.     Defendant GM caused the Mugshots Birmingham Entities to pay over $39,000.00 to Making Life Grand Charity, an amount that to the knowledge of the Mugshots Birmingham Members may not have actually been paid to the Charity. To the extent such payment was not made to the Charity or paid inaccurately, such non-payment or inaccurate payment of this money by Defendant McDonald or Defendant GM breached the duty of loyalty.

61.     Finally, Defendant McDonald, through Defendant GM, caused the Mugshots Birmingham Entities to pay unreasonable fees, costs and expenses to Defendant GM for services allegedly provided to the Mugshots Birmingham Entities and their restaurants. Defendant GM

failed to properly perform the requirements under its Management Agreements. Payment of this money served solely to benefit Defendant McDonald. This breached the duty of loyalty.

62.   Additionally, each of these acts makes continuing in business with Defendant McDonald not reasonably practicable.

63.   For each of these reasons, and pursuant to Section XI of the Vestavia Operating Agreement, Defendant McDonald should be disassociated as a Member of ALG Vestavia Hills, LLC.   All membership interest in ALG Vestavia Hills, LLC currently owned by Defendant McDonald should be transferred to Vestavia Hills pursuant to Sections VIII(B)(1-2) of the Vestavia Operating Agreement.

64.   For each of these reasons, and pursuant to Section XI of the BJCC Operating Agreement, Defendant McDonald should be disassociated as a Member of Mugshots BJCC, LLC.   All membership interest in Mugshots BJCC, LLC currently owned by Defendant McDonald should be transferred to Mugshots BJCC pursuant to Sections VIII(B)(1-2) of the BJCC Operating Agreement.

65.   Likewise, for each of these reasons, and pursuant to Section XI of the Inverness Operating Agreement, Defendant McDonald should be disassociated as a Member of Mugshots Inverness, LLC.   All membership interest in Mugshots Inverness Corners, LLC currently owned by Defendant McDonald should be transferred to Mugshots Inverness pursuant to Sections VIII(B)(1-2) of the Inverness Operating Agreement.

66.   Plaintiffs respectfully request that this Court enter a declaratory judgment requiring compliance with the above terms.

## CAUSES OF ACTION

### Count I:  Violation of the Racketeer Influenced and Corrupt Organizations Act

67.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

68.     As detailed above, upon information and belief, Defendant McDonald falsely represented to Priority One, a financial institution, that he or another entity owned by him had the sole ownership interest in the equipment and inventories of the restaurants owned by Mugshots BJCC and Mugshots Inverness.

69.     Upon information and belief, Defendant McDonald accomplished this fraud by falsely representing that he or another entity owned by him was the sole owner of Mugshots BJCC and Mugshots Inverness and had "good and marketable title" to such equipment and inventories.

70.     Upon information and belief, Defendant McDonald reaffirmed and enlarged this fraud by causing the equipment and inventories of Mugshots BJCC and Mugshots Inverness to be collateralized on a second loan from Priority One.

71.     Upon information and belief, as to the March 2017 Priority One Loan, Defendant McDonald accomplished the same by again falsely representing that he was the sole owner of Mugshots BJCC and Mugshots Inverness.

72.     Through these false pretenses, Defendant McDonald caused Priority One to issue what are understood to be substantial loans, using the equipment and inventories of Mugshots Inverness and Mugshots BJCC as collateral.

73.     These actions constitute violations of 18 U.S.C. § 1344.

74.     Importantly, Defendant McDonald used his involvement in certain enterprises, namely the ownership of Mugshots BJCC and Mugshots Inverness, either individually or through his ownership of Defendants GIH, Defendant GM, or Defendant GPH, or another entity

15

owned by McDonald, to engage in this pattern of racketeering practices, violating the Racketeer Influenced and Corrupt Organization Act ("RICO").

75.     Further, upon information and belief, these were not the only instances of Defendant McDonald utilizing false pretenses to defraud financial institutions as it relates to the Mugshots Birmingham Entities or other Mugshots entities located elsewhere.   Other such instances will likely be uncovered during the course of this litigation.

76.     Under 18 U.S.C. § 1964(a), this Court may order Defendant McDonald to divest themselves of any interest in ALG Vestavia Hills, Mugshots BJCC and Mugshots Inverness.

77.     Additionally, because Plaintiffs have suffered injury in the form of increased accounting fees and attorneys' fees as a direct and proximate result of Defendant McDonald's RICO violation, Plaintiffs are entitled to recover treble damages.

### Count II: Tortious Breach of Contract

78.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

79.     As discussed in detail above, Defendant GM contracted with Vestavia Hills, Mugshots BJCC and Mugshots Inverness to manage the operation of the Mugshots Birmingham Entities' three restaurants.

80.     Defendant GM tortiously breached those Management Agreements by grossly mismanaging the operation, including, without limitation:

      **a.** By failing to pay all taxes when due;

      **b.** By failing to keep and maintain appropriate financial documents;

      **c.** By paying substantial sums including development fees, fees to a charity, fees to an interior designer, and other fees, some of which may not yet

16

have been discovered, for reasons not reasonably related to operation of the restaurant.

81.     Defendant GM's gross mismanagement constitutes a tortious breach of the Vestavia Management Agreement, the Inverness Management Agreement, and the BJCC Management Agreement and entitles Plaintiffs to compensatory and punitive damages.

<h3 align="center">Count III: Negligence/Gross Negligence</h3>

82.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

83.     As discussed in detail above, Defendant GM contracted with Vestavia Hills, Mugshots BJCC and Mugshots Inverness to manage the operation of the Mugshots Birmingham Entities' three restaurants.

84.     Defendant GM was negligent and/or grossly negligent in said operation by, without limitation:

> **a.** Failing to pay all taxes when due;
>
> **b.** Failing to keep and maintain appropriate financial documents;
>
> **c.** By paying substantial sums including development fees, fees to a charity, fees to an interior designer, and other fees, some of which may not yet have been discovered, for reasons not reasonably related to operation of the restaurant.

<h3 align="center">Count IV: Unjust Enrichment/Conversion/Fraudulent Inducement</h3>

85.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

17

86.     As discussed in detail above, Defendant McDonald was the sole owner of Defendants GM, GIH, and GPH.

87.     Defendant McDonald, either on his own or through his ownership of GM, GIH, and GPH or other entities owned by McDonald, was in charge of the operation of the three restaurants owned by the Mugshot Birmingham Entities.

88.     Through contracts with the Mugshot Birmingham Entities and by virtue of his ownership interest in the Mugshots Birmingham Entities, Defendant McDonald was able to egregiously cause unnecessary and excess amounts of money to be paid by the Mugshot Birmingham Entities to Defendant McDonald, either directly or indirectly through Defendants GM, GIH and GPH, or other entities owned by McDonald, in order to benefit Defendant McDonald financially.

89.     In other words, Defendant McDonald, through Defendant GM, Defendant GIH, and Defendant GPH, or other entities owned by McDonald, converted the money of Vestavia Hills, Mugshots Inverness and Mugshots BJCC for his own use or the use of another of his companies to the detriment of Plaintiffs.

90.     Defendants McDonald, GM, GIH and GPH or any other entity owned by McDonald and involved with the Mugshots Birmingham Entities were unjustly enriched by this fraudulent payment and/or converted such funds.

91.     Also as discussed above, Defendant McDonald fraudulently induced the Mugshots Birmingham Members to execute a development agreement for the development of new Alabama Mugshots restaurants, fraudulently taking $100,000.00 to open those stores despite the fact that the development of these anticipated new stores has not been implemented in any way.

18

92.     Defendant McDonald's fraudulent misrepresentation entitles Plaintiffs to compensatory and punitive damages.

93.     This willful and wanton disregard for Plaintiffs' property interests and rights entitles Plaintiffs to compensatory and punitive damages.

## AD DAMNUM

94.     Plaintiffs incorporate and adopt by reference each and every fact and allegation set forth in the preceding and following paragraphs.

95.     Based on the foregoing, Plaintiffs respectfully request that this Court grant the following relief:

   a. Enter a declaratory judgment declaring that:

      i. Defendant Chris McDonald is disassociated as a Member of ALG Vestavia Hills, LLC; and

      ii. ALG Vestavia Hills, LLC shall pay as consideration an amount to be determined under the provisions of the Amended Vestavia Hills Operating Agreement.

      iii. Defendant Chris McDonald is disassociated as a Member of Mugshots BJCC, LLC; and

      iv. Mugshots BJCC, LLC shall pay as consideration an amount to be determined under the provisions of the Mugshots BJCC Operating Agreement.

      v. Defendant Chris McDonald is disassociated as a Member of Mugshots Inverness, LLC; and

      vi. Mugshots BJCC, LLC shall pay as consideration an amount to be determined under the provisions of the Mugshots Inverness Operating Agreement.

   b. Enter an Order granting compensatory and punitive damages, as well as reasonable attorneys' fees, against all Defendants for (1) violation of RICO; (2) tortious breach of contract; (3) negligence/gross negligence; and (4) unjust enrichment/conversion/fraudulent misrepresentation.

19

WHEREFORE, PREMISES CONSIDERED, Plaintiffs ALG Vestavia Hills, LLC, Mugshots BJCC, LLC, Mugshots Inverness Corners, LLC, Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, and Alex Pitt respectfully request that this Court enter a judgment granting all of the relief requested herein, as well as any other relief the Court deems appropriate.

Respectfully submitted, this the 27th day of September, 2017.

McCraney, Coco & Lee, PLLC

Lawrence M. Coco, III (MS Bar No. 100378)

On behalf of ALG Vestavia Hills, LLC, Mugshots BJCC, LLC, Mugshots Inverness Corners, LLC, Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, and Alex Pitt

**OF COUNSEL**

Lawrence M. Coco, III
T. Stewart Lee, Jr.
McCraney, Coco & Lee, PLLC
219 Waterford Square, Suite 1
Madison, MS 39110
Telephone:  601.899.0065
Facsimile:  866.733.2008
Email:  lawrence@mclpllc.com

20