IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALG VESTAVIA HILLS, LLC, et al                                     PLAINTIFFS

v.                                         CIVIL ACTION NO. 3:17-CV-788-HSO-JCG

GRAND INVESTMENT HOLDINGS, LLC, et al                    DEFENDANTS

---

**PLAINTIFFS' RESPONSE TO RICO NOTICE**

---

**COME NOW PLAINTIFFS** ALG Vestavia Hills, LLC ("Vestavia Hills"), Mugshots BJCC, LLC ("Mugshots BJCC"), Mugshots Inverness Corners, LLC ("Mugshots Inverness"), Chad Eron ("Eron"), Jim Hunter Walsh ("Walsh"), Patrick Johnson ("Johnson"), Stephen Arant ("Arant"), and Alex Pitt ("Pitt") (collectively, "Plaintiffs") and file this Response to RICO Notice, as required by the Court, and state the following:

1.     State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).

<u>Response</u>: The alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962 (c).

2.     List each Defendant and state the alleged misconduct and basis of liability of each Defendant.

<u>Response</u>: The Defendant who allegedly engaged in a pattern of racketeering practices, violating RICO, is Christopher McDonald ("McDonald"). McDonald violated RICO either by his own, individual actions, or through his actions as sole owner of the other Defendants to this action, Grand Investment Holdings, LLC, Grand Property Holdings, LLC, Grand Management, LLC, and Making Life Grand Charity, Inc. McDonald may have violated RICO through ownership of other, unidentified companies owned by McDonald. Collectively, and for ease of reference herein, Grand

Investment Holdings, LLC, Grand Property Holdings, LLC, Grand Management, LLC, Making Life Grand Charity, Inc., and any other unidentified company owned solely by McDonald are sometimes referred to as the "McDonald Entities."

Defendant McDonald violated 18 USC 1962(c) by, either individually or through one or all of the McDonald Entities, committing fraud against multiple financial institutions, resulting in McDonald's or one of the McDonald Entities' receipt of income derived from this fraudulent activity. This fraud involved obtaining fraudulent loans by misrepresenting certain information to the banks, and fraudulently collateralizing property owned by separate Mugshots restaurants without the consent of the owners. This money was not used to benefit the enterprises, but the enterprises were used to fraudulently obtain the loans.

3. List the alleged wrongdoers, other than the Defendant(s) listed above, and state the alleged misconduct of each wrongdoer.

Response: There are no other alleged wrongdoers other than those set forth in the Response to #2 above in this cause of action.

4. List the alleged victims and state how each victim was allegedly injured.

Response: The alleged victims in this cause of action are the Plaintiffs: ALG Vestavia Hills, LLC, Mugshots BJCC, LLC, Mugshots Inverness Corners, LLC, Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, and Alex Pitt. Plaintiffs Eron, Walsh, Johnson, Arant and Pitt, the "Mugshots Birmingham Members," were investors in ALG Vestavia Hills, Mugshots BJCC, and Mugshots Inverness. *See* Complaint at ¶¶ 10, Defendant McDonald was the sixth investor. *Id.*

Defendant McDonald, as the owner of a company called Ain't Life Grand Investments, LLC, developed the Mugshots Restaurant concept, opening several restaurants either on his own or through franchises with investors such as the Mugshots Birmingham Members. The Mugshots

Birmingham Members invested in and, along with McDonald, own three entities: ALG Vestavia Hills, LLC, Mugshots BJCC, LLC, and Mugshots Inverness, LLC (the "Mugshots Birmingham Entities" or sometimes referred to herein as the "Entities"). McDonald was given significant control over the day to day operations of the restaurants owned by the Mugshots Birmingham Entities. Pursuant to the separate operating agreements of each Mugshots Birmingham Entity, McDonald, through Defendant Grand Management, a company solely owned and operated by McDonald, was authorized, through separate management agreements between the individual Mugshots Birmingham Entities and Defendant Grand Management, to manage the restaurants.

McDonald developed a scheme whereby he would fraudulently borrow money from different banks, collateralizing the property of individual restaurants without the consent or knowledge of his investors. *See* Complaint at ¶¶ 21-31. Upon information and belief, this fraudulent activity included completing false loan applications. *Id.* New information obtained by the Plaintiffs since the date the Complaint in this action was filed has indicated that McDonald also has undertaken a kiting scheme or other questionable banking activity through accounts owned or co-owned by McDonald and located at Regions Bank. Many of these accounts are being shut down by Regions at this time.

Additionally, as set forth in a separate complaint involving a Mugshots restaurant owned by a different group of Plaintiffs, McDonald has obtained other fraudulent loans. See *Mugshots Ridgeland, LLC and W. Walker Investments, LLC v. Grand Investment Holdings, LLC et al*, Civil Action No. 3:17cv263DCB-LRA. The *Mugshots Ridgeland* case was filed April 13, 2017 in this same court and alleges similar fraudulent and negligent activity as the instant case. All of this activity by McDonald, whether by McDonald individually or through a McDonald Owned Entity has resulted in damages to the Plaintiffs. These damages include the payment by Plaintiffs of

3

significant legal and accounting fees to protect their interests, including having liens removed from the fraudulently encumbered property. Pursuant to the Alabama Secretary of State's website, the liens remain on the property owned by Mugshots BJCC, LLC and Mugshots Inverness, LLC. Again, these liens were placed on property owned by these entities after McDonald fraudulently obtained loans. Furthermore, upon information and belief, McDonald has improperly directed funds from the companies to use to pay the bank loans, resulting in the restaurants owned by the Birmingham Mugshots Entities being unable to pay certain taxes and other liabilities owed. Plaintiffs anticipate identifying additional damages once discovery commences in this action.

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern or racketeering shall include the following information:

(a) List the alleged predicate acts and the specific statutes which were allegedly violated.

Response: The alleged predicate act is fraud against a financial institution, in violation of 18 USC § 1344.

(b) Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts.

Response: Plaintiffs are aware of the following predicate acts:

(i) A fraudulent loan obtained on or about December 10, 2015 from Priority One Bank of Hattiesburg, as more fully set forth in the Complaint at ¶¶ 21-24.

(ii) A fraudulent loan obtained on or about March 6, 2017, fraudulently obtaining a second loan from Priority One, as more fully set forth in the Complaint at ¶¶ 25-29.

Importantly, Plaintiffs have recently received information that Defendant McDonald,

either individually or through an entity or various entities owned solely by McDonald, has been fraudulently participating in a kiting scheme or other fraudulent scheme related to various Regions Bank checking accounts of which he is either the sole owner or a co-owner.

Furthermore, discovery in this case has not yet begun. Plaintiffs anticipate discovering additional fraudulent activity perpetrated by Defendant McDonald and directly related to this fraudulent banking activity.

(c) If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of person to whom and by whom the alleged misrepresentations were made.

Response: This question (c) is inapplicable to this cause of action.

(d) State whether there has been a criminal conviction for violation of the predicate acts.

Response: There has not been a criminal conviction for violation of the predicate acts.

(e) State whether civil litigation has resulted in a judgment in regard to the predicate acts.

Response: No judgement has been entered in regard to the predicate acts alleged in this cause of action.

(f) Describe how the predicate acts form a "pattern of racketeering activity."

Response: "Pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity, .... The last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 USC § 1961(5).

The definition of "racketeering activity" as set forth in 18 USC § 1961(1) includes fraud against financial institutions as set forth at 18 USC § 1344.

McDonald, either individually or through one of the McDonald Owned Entities, committed at least two acts of fraud against financial institutions within 18 months of each other, squarely fitting into the definition of "pattern of racketeering activity." Plaintiffs anticipate discovering other similar fraudulent activities once discovery commences.

(g) State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

Response: The predicate acts of fraud against a banking institution committed by Chris McDonald relate to each other as part of a common plan. McDonald, individually pursuant to the operating agreements of the Entities or through ownership of Defendant Grand Management, was authorized to manage the various restaurants operated by the Mugshots Birmingham Entities. As set forth in the Complaint, McDonald mismanaged those restaurants. McDonald, either individually or through Grand Management, failed to pay all outgoing taxes, fees, wages, expenses and costs of any kind as required by various management agreements. *See* Complaint at ¶¶ 36-37. McDonald further failed to maintain proper financial records for these restaurants and entities. *Id.* Upon information and belief, McDonald and several of the McDonald Entities were having financial difficulties.

For unknown reasons, McDonald devised a scheme to fraudulently borrow money either for his own financial benefit or the benefit of the McDonald Entities. This scheme included acquiring the fraudulent loans as set forth in section 5 above, a possible kiting scheme, and other fraudulent activity yet to be determined all which rise to the level of fraud against financial institutions. The *Mugshots Ridgeland* case alleges similar fraudulent activity as the instant case.

The acquisition of the two identified fraudulent bank loans by themselves are a "common plan" developed by McDonald. The fraudulent loan obtained in the *Mugshots Ridgeland* case, and other potentially yet unidentified fraudulent activity is also part of this common plan.

6. Describe in detail the alleged enterprise for each RICO claim. A description of each enterprise shall include the following information:

(a) State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise.

<u>Response</u>: There are three separate enterprises in this action: ALG Vestavia Hills, LLC, Mugshots BJCC, LLC and Mugshots Inverness Corners, LLC, referenced herein as the Mugshots Birmingham Entities.

(b) Describe the structure, purpose, function and course of conduct of the enterprise.

The Mugshots Birmingham Entities were established to own and operate three separate Mugshots restaurant franchises. As stated *supra*, these three entities are all owned by the Plaintiffs in this action and Defendant McDonald. Plaintiffs invested with McDonald, and gave McDonald control over the restaurants through each Entity's operating agreement and certain Management Agreements. Members of the three entities were authorized to make decisions and to bind the individual entities, but only if the entities were bound in the ordinary course of the company's business. The operating agreements of each entity specifically states that "no Member other than Chris McDonald shall be authorized to bind [the relevant entity] by or through decisions concerning business operations of the [relevant] restaurant."

For reasons unknown to the Plaintiffs, McDonald used the enterprises to obtain fraudulent loans from various banks. These loans were secured by collateral property owned by the Mugshots Birmingham Entities without the permission of the Birmingham Mugshots Members. The money

was not used for the benefit of the Mugshots Birmingham Entities. However, because the Mugshots Birmingham Entities were the loan applicants and then the debtors, and these Entities are engaged in and affect interstate commerce, the Entities became enterprises for purposes of RICO.

(c) State whether any Defendants are employees, officers or directors of the alleged enterprise.

Response: Defendant McDonald is a Member of each of the Mugshots Birmingham Entities, which are each enterprises. McDonald is not an employee of any of the Mugshots Birmingham Entities. Although no officers were specifically designated for any of the Mugshots Birmingham Entities, McDonald, individually, and pursuant to the terms of each of the Mugshots Birmingham Entities' Operating Agreements did have sole authority with regard to decisions concerning business operations of the restaurant.

(d) State whether any Defendants are associated with the alleged enterprise.

Response: Defendant McDonald is a Member of each of the Mugshots Birmingham Entities, which make the three separate enterprises.

(e) State whether you are alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or are members of the enterprise.

Response: Plaintiffs allege that Defendant McDonald is one of the Members of each alleged enterprise.

(f) If any Defendants are alleged to be either the enterprise itself or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

Response: Defendant McDonald is a perpetrator of the alleged racketeering activity.

7. State whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity. In either event, describe in detail.

Response. The pattern of racketeering activity and the enterprise are separate. McDonald, although a Member of each of the three companies that encompass the Mugshots Birmingham Entities, and are each a separate enterprise, is an individual. McDonald was authorized to be the only member of each Entity to make decisions concerning business operations of each restaurant. However, McDonald had no authority to bind any of the Entities in a way that was outside the ordinary course of each Entity's business. He certainly had no authority to obtain significant loans that were not used to benefit the Entities, and no authority to encumber property owned by each Entity in order to obtain a fraudulent loan. The pattern of racketeering activity by McDonald was separate from the various enterprises.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

Response. Each of the three enterprises is a limited liability company established to own and operate separate Mugshots restaurant franchises. McDonald was authorized to manage the day to day business operations of each restaurant. All members in each entity were authorized to make decisions on behalf each separate entity so long as decisions are made in the ordinary course of the company's business. The provisions of the operating agreements for each of the three Mugshots Birmingham Entities are the same.

While a bank loan, if necessary to support or enhance the operation of a particular restaurant owned by one of the Mugshots Birmingham Entities would potentially fall within the

9

ordinary course of one of the Entities' business, the loans referenced in the Complaint and obtained by McDonald were not in the ordinary course of business. They were fraudulently obtained and they secured property owned by the different Entities. The funds from these loans, however, were not used to benefit the restaurants owned by the Entities. Further, as set forth in the Mugshots Ridgeland case, *supra*, these were not the only fraudulent loans obtained by McDonald.

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

Response: The enterprises receive no benefit from the pattern of racketeering, namely bank fraud, committed by McDonald. McDonald himself, or the other Defendant entities in this action, are the only persons/entities that benefitted from the funds of the fraudulently obtained bank loans.

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

Response: Mugshots is a restaurant franchise owned by a Louisiana company called Ain't Life Grand Investments, which is also owned by Chris McDonald. Mugshots has franchises throughout the Southeast, most of which are owned at least in part by Chris McDonald or entities partly owned by Chris McDonald. The restaurants which are owned by the enterprises in this action regularly participate in interstate commerce as the locations are in various states throughout the Southeast, while the franchise owner is located in Louisiana and by purchasing goods and services from businesses located in other states.

11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:

Response: The Complaint does not allege a violation of 18 U.S.C. § 1962(a).

12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the

acquisition or maintenance of any interest in or control of the alleged enterprise.

Response: The Complaint does not allege a violation of 18 U.S.C. § 1962(b).

13. If the Complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:

(a) State who is employed by or associated with the enterprise.

Response: Chris McDonald is associated with the enterprise.

(b) State whether the same entity is both the liable "person" and the "enterprise under § 1962(c).

Response: Chris McDonald is the liable "person." ALG Vestavia Hills, LLC, Mugshots BJCC, LLC and Mugshots Inverness, LLC is each an enterprise. Chris McDonald is the liable "person" for each enterprise.

14. If the Complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

Response: The Complaint does not allege a violation of 18 U.S.C. § 1962(d).

15. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

Response: Plaintiffs entered a business relationship with McDonald and, pursuant to the separate operating agreements of the Birmingham Mugshots Entities, gave McDonald significant control over the operation of the individual restaurants owned by the three Entities. McDonald abused this authority by fraudulently encumbering property owned by the Birmingham Mugshots entities and using the money obtained through the fraudulent loans for his own benefit or the benefit of other entities owned solely by McDonald and unrelated to the Birmingham Mugshots Entities and the restaurants they own.

16. List the actual damages for which Defendant is allegedly liable.

Response: The total amount of damages for which Defendant is liable is unknown at this time. Plaintiffs have been unable to obtain the exact amount of the loans from the banks, although they have requested the amount. Liens remain on the property owned by the Mugshots Birmingham Entities, and certain obligations owed by the restaurants owned by the Mugshots entities have not been paid in full allegedly because McDonald has improperly directed funds from the Mugshots Birmingham Entities and the restaurants owned by them in part to repay the fraudulently obtained loans. Plaintiffs anticipate, during discovery, identifying additional bad and fraudulent acts by Defendant McDonald. The total amount of damages will not be able to be calculated until discovery is completed.

17. List all other federal causes of action, if any, and provide citations to the relevant statute(s).

Response: There are no other federal causes of action claimed in this action.

18. List all pendant state claims, if any.

Response: In the Complaint, Plaintiffs have first requested declaratory judgment declaring that, under the terms of the operating agreements of the three Mugshots Birmingham Entities, that McDonald be disassociated as a Member of each entity, forfeiting all rights attendant to such Membership. The state law causes of action claimed by Plaintiffs are: (i) Tortious Breach of Contract; (ii) Negligence/Gross Negligence; and (iii) Unjust Enrichment/Conversion/Fraudulent Inducement.

19. Provide any additional information that you feel would be helpful to the Court in considering your RICO claim.

Plaintiffs assert that once discovery in this action commences, other fraudulent activity by

McDonald will be discovered. Plaintiffs have spent the months prior to and since filing the Complaint attempting to sort through mismanaged accounting and other records to determine what other obligations are owed by the Birmingham Mugshots Entities. Clearly McDonald mismanaged the restaurants. The facts of the Complaint show that McDonald failed to pay taxes as required, took money from the Plaintiffs for purported investment uses, while actually using the money for his own benefit or the benefit of other companies owned by him, and acted in bad faith all around. Plaintiffs assert that during discovery they will find that McDonald was in such bad financial shape either individually or through his companies, that he had no choice but to develop a scheme to keep his individual financial condition or that of his companies afloat. The fraudulently obtained loans that serve as the basis for this RICO action are only part of the picture. This scheme impacts multiple companies and multiple people across multiple states.

Respectfully submitted, this the 11th day of December, 2017.

McCraney, Coco & Lee, PLLC

*/s/ Lawrence M. Coco, III*

Lawrence M. Coco, III (MS Bar No. 100378)

On behalf of ALG Vestavia Hills, LLC, Mugshots BJCC, LLC, Mugshots Inverness Corners, LLC, Chad Eron, Jim Hunter Walsh, Patrick Johnson, Stephen Arant, and Alex Pitt

**OF COUNSEL**

Lawrence M. Coco, III
McCraney, Coco & Lee, PLLC
219 Waterford Square, Suite 1
Madison, MS 39110
Telephone: 601.899.0065
Facsimile: 866.733.2008
Email: lawrence@mclpllc.com

## CERTIFICATE OF SERVICE

I, Lawrence M. Coco, III do hereby certify that I have this date electronically filed the above and foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This the 11th day of December, 2017.

*/s/ Lawrence M. Coco, III*
Lawrence M. Coco, III